Durham v. Quincy Mutual Fire Ins. Co.

ERASTUS JONES DURHAM v. QUINCY MUTUAL FIRE INSURANCE COMPANY

No. 8221SC958

(Filed 6 September 1983)

**Insurance § 122— fire insurance—exclusion of evidence relating to possible motive for plaintiff burning home—error**

In an action in which plaintiff sought damages from loss by fire to premises covered by an insurance policy written by the defendant, the trial court erred in excluding certain evidence relating to motive for plaintiff to burn his home and the court erred in trying to interpret for the jury testimony in which the defendant tried to establish motive in its instructions to the jury.

APPEAL by defendant from *Albright, Judge.* Judgment entered 22 June 1982 in Superior Court, FORSYTH County. Heard in the Court of Appeals 22 August 1983.

Plaintiff seeks damages from loss by fire to premises covered by an insurance policy written by the defendant. Defendant denied liability. The parties stipulated the amount of damages and tried the case only on the question of liability. Defendant appeals a judgment entered on the issue rendered by the jury in plaintiff's favor.

*Morrow and Reavis, by John F. Morrow for plaintiff-appellee.*

*Womble, Carlyle, Sandridge and Rice, by Allan R. Gitter and Richard T. Rice, for defendant-appellant.*

HILL, Judge.

Plaintiff and his wife were the owners of a house and lot located at 1750 Reynolda Road in Winston-Salem. Defendant had issued a homeowner's insurance policy on the property. On 13 January 1977 the house was destroyed by fire. At the time of the fire, plaintiff and his wife were separated. Plaintiff lived alone in the house except for a tenant occupying a basement apartment. Plaintiff brought suit in his name alone against the defendant seeking recovery of the full policy limits. Defendant answered plaintiff's complaint, admitting the policy but denying liability on two grounds. First, the plaintiff failed to submit to an examination under oath as required thus constituting a material breach of

the policy which should relieve the insurer of its liability to pay. Secondly, plaintiff by willfully and intentionally setting fire to the house had increased the hazard by means within his control, violating the insurance policy. Plaintiff asserted that he submitted to an examination under oath and that the fire was accidental.

A jury found in favor of the plaintiff on the issue of liability. Defendant's timely motion for a new trial was denied, and he appeals to this court.

Thereafter, the parties agreed to the amount of liability in the event the liability judgment was upheld, and a "Final Judgment" was entered.

Included within defendant's numerous assignments of error is its contention that the court erred in excluding certain evidence relating to motive for plaintiff to burn his house and evidence that showed a common pattern, design, or scheme on plaintiff's part. We hold the court did not err in excluding the evidence relating to a common pattern, design or scheme as this evidence was too conjectural to have any probative value in the case. But we agree it was error for the court to exclude the evidence relating to motive, and hold that its exclusion was sufficiently prejudicial as to warrant a new trial.

Evidence of motive in a case such as this is clearly admissible. As stated in 1 Brandis on N.C. Evidence § 83 (2d ed. 1982):

> The motive which prompts a person to do a particular act is seldom an essential element of a cause of action or defense, and therefore it need not ordinarily be proved. The existence of a motive is, however, a circumstance tending to make it more probable that the person in question did the act, hence evidence of motive is always admissible where the doing of the act is in dispute. The point arises most often in prosecutions for homicide, arson and other crimes, but is occasionally presented in civil cases as well. Motive may be proved by declarations and other conduct of the person himself, or by evidence of facts which would naturally give rise to a relevant motive and from which such a motive may therefore reasonably be inferred.

There have been several cases in this state involving the felonious burning of property in which evidence of motive was

held to be admissible. *See State v. Harrell,* 20 N.C. App. 352, 201 S.E. 2d 716, *cert. denied,* 284 N.C. 619, 202 S.E. 2d 275 (1974); *State v. Brackett,* 55 N.C. App. 410, 285 S.E. 2d 852, *reversed on other grounds,* 306 N.C. 138, 291 S.E. 2d 660 (1982); *State v. Grant,* 19 N.C. App. 401, 199 S.E. 2d 14, *app. dismissed,* 284 N.C. 256, 200 S.E. 2d 656 (1973); *State v. Sargent,* 22 N.C. App. 148, 205 S.E. 2d 768 (1974). In *Harrell,* testimony concerning the defendant's financial obligations and lawsuits pending against him was held competent to show motive. In *Brackett,* testimony showing there was fire insurance on the property burned was held admissible to show motive on defendant's part.

In the present case, defendant attempted to present evidence tending to show that plaintiff and his wife were having marital difficulties; that Mrs. Durham wanted the house on Reynolda Road for herself and her daughter; and that plaintiff did not want her to have the house. These efforts were largely unsuccessful because of rulings of the court. Plaintiff testified that his wife said she did not want the house and that he had been told this by a mutual friend. He admitted though that he "did find something later on where she did ask for the house, after the fire."

To rebut this testimony defendant called Mrs. Durham as a witness who testified as follows in the presence of the jury:

Q. (By Mr. Gitter, continuing) Have you, at any time prior to the fire that occurred on January 13, 1977, made a demand upon Mr. Durham for possession of the house on Reynolda Road so that you could live in — separate and apart from him?

THE COURT: You can answer that.

THE WITNESS: I had not made a demand in Court yet; but —

MR. MORROW: Objection.

THE COURT: Objection sustained. I don't know what she meant.

. . . .

Q. Did you ever have any conversation with Mr. Durham about possession of the house prior to the fire?

A. No.

Defendant then attempted to question Mrs. Durham as to whether she had ever informed plaintiff that she wanted possession of the home prior to the fire. Plaintiff objected to the question which objection was sustained. A hearing in the absence of the jury was then held at which Mrs. Durham testified:

> Q. And in connection with the action that your attorneys then filed in 1976 after your second separation, did you inform your attorneys that you wanted possession of the house?

> A. Yes. I wanted possession of the house because I had a minor child.

> Q. And that's the reason that you wanted to have possession of the house here on Reynolda Road?

> A. (The witness nods her head up and down.)

Later, during the voir dire hearing the following colloquy occurred:

> MR. GITTER: But, Mr. Durham did testify, I believe, Your Honor, when he was being examined, that his wife did not want the possession of the house and never said to him that she wanted possession and had told somebody else that she didn't want possession of the house, and I think it's competent to show that that (sic) certainly was not her intention at the time, that she did in fact want possession of it.

> THE COURT: When she first answered, she said she didn't; so I'm going to move on.

> Objection sustained.

Other evidence was brought out on voir dire which indicated that Mrs. Durham had made demand for possession of the house prior to the fire in an action filed by her against plaintiff, but Mrs. Durham testified she could not recall whether she had made such a demand. The court further excluded other testimony concerning Mrs. Durham's desire to live in the house and her denial that she ever told anyone otherwise on the basis that the witness was bound by her prior answer.

Apparently, the court misinterpreted Mrs. Durham's testimony as meaning she did not want possession of the house when,

in fact, she did not so testify. Further, the court related its misunderstanding of the testimony in its charge to the jury wherein the court stated, in pertinent part:

> COURT: I'll say now, Mr.—the parties that had marital difficulties and Mr. Morrow is contending that she was not seeking possession of the house, just had the one child, they said that she was seeking alimony and possession of the house; they were having marital difficulties, that's sure, so you will consider all—and I'm probably in error if I said she was seeking possession of the house directly because *her first statement on the stand was that she was not seeking possession of the house at that time,* as I recall—or somebody asked—
>
> I'll look at her testimony one more time—never had any conversations about possession prior to the fire. That was what she said. Now, what that meant, *I assume that meant possession of the house.* (Emphasis added.)

The court erred in its charge to the jury both by misstating the substance of Mrs. Durham's testimony and by relaying its assumption as to what was meant by the testimony. It is the function of the jury, not the judge, to interpret testimony and it is error for the court to state its assumptions as to the meaning of testimony.

Having not heard the excluded evidence, the jury may have been left with the impression that plaintiff had no motive to burn his house other than to recover the insurance proceeds. In a case such as this, the defendant must as a matter of practical necessity rely primarily on circumstantial evidence which tends to implicate the plaintiff. *See Fowler-Barham Ford v. Insurance Co.,* 45 N.C. App. 625, 263 S.E. 2d 825, *cert. denied,* 300 N.C. 372, 267 S.E. 2d 675 (1980); 5 Am. Jur. 2d Arson § 47 (1962). When such evidence is excluded, the effect may be highly prejudicial. We hold the exclusion of the proffered evidence of motive in this case and the improper jury charge were sufficiently prejudicial as to entitle defendant to a new trial.

We have carefully considered defendant's other assignments of error and find them to be without merit.

In re Rogers

New trial.

Chief Judge VAUGHN and Judge BECTON concur.